**19-56455**

IN THE

# United States Court of Appeals

## FOR THE NINTH CIRCUIT

◀◆◆

DEAN DRULIAS, derivatively on behalf of Truecar, Inc.,

*Plaintiff-Appellant,*

—v.—

MICHAEL GUTHRIE; VICTOR PERRY, "CHIP"; JOHN PIERANTONI; ABHISEK AGRAWAL; ROBERT BUCE; CHRISTOPHER CLAUS; STEVEN DIETZ; JOHN KRAFCIK; ERIN LANTZ; WESLEY NICHOLS; ION YADIGAROGLU; JOHN MENDEL; TRUECAR, INC., Nominal Defendant; UNITED SERVICES AUTOMOBILE ASSOCIATION,

*Defendants-Appellees,*

—and—

UNITED STATES AUTOMOBILE ASSOCIATION,

*Defendant,*

SUBASH D'SOUZA; DAVID BRYAN; HERBERT SILVERBERG,

*Intervenors.*

—————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

---

### REPLY BRIEF FOR PLAINTIFF-APPELLANT

---

LAWRENCE D. PASKOWITZ
PASKOWITZ LAW FIRM PC
208 East 51st Street, Suite 380
New York, New York 10022
(212) 685-0969

DAVID E. BOWER
MONTEVERDE & ASSOCIATES PC
600 Corporate Pointe, Suite 1170
Culver City, California 90230
(213) 446-6652

BETH KELLER
MONTEVERDE & ASSOCIATES PC
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, New York 10118
(212) 971-1341

*Attorneys for Plaintiff-Appellant*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………iii

I. INTRODUCTION ...................................................................................1

II. ARGUMENT........................................................................................3

    A. Plaintiff Sufficiently Pleads His Claim for Violation of
    Section 29(b) ..................................................................................3

        1. Congress Intended that Section 29(b) Encompass Illegal
        Contracts *and* Contracts Where the Performance Involves a
        violation of the Securities Laws .....................................................4

        2. Ninth Circuit Decisions Hold that Even Lawful Contracts Are
        Subject to Rescission Under Section 29(b) ...................................6

        3. The Cases Cited by the District Court and by Defendants are Not
        Precedential Authority and Their Interpretation of Section 29(b)
        Conflicts with the Legislative History of the Exchange Act.........9

    B. Plaintiff Sufficiently Pleads his Claim for Violation of Section 10(b)
    and Rule 10b-5 Promulgated Thereunder ...........................................11

        1. The Complaint Alleges Damages and Loss Causation................12

        2. Analogizing To Fraud-on-the-Market Class Actions is Improper
        Here..........................................................................................14

    C. TrueCar's Forum Selection Clause Does Not Provide an Alternative
    Basis to Affirm Dismissal.........................................................15

        1. Allowing TrueCar to Use its Forum Selection Provision to
        Extinguish Plaintiff's Federal Claims is Contrary to Delaware
        Law ..........................................................................................16

i

2.    Defendants' Argument Regarding the Existence of Reasonable Remedies in Delaware Chancery Court should be Rejected.......19

III.    CONCLUSION.................................................................................21

# TABLE OF AUTHORITES

**Cases**                                                                        **Page(s)**

*A. Sun v. Advanced China Healthcare, Inc.*,
  901 F.3d 1081 (9th Cir. 2018) ...............................................................19

*In re Asyst Technologies, Inc. Derivative Litig.*,
  No. C-06-04669 EDL, 2008 U.S. Dist. LEXIS 96834 (N.D. Cal.
  Nov. 12, 2008) ...............................................................................6, 7, 11

*Beck v. Prupis*,
  529 U.S. 494 (2000).................................................................................9

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
  455 F.3d 195 (3d Cir. 2006) ..................................................................10

*Boilermakers Local 154 Ret. Fund v. Chevron Corp.*,
  73 A.3d 934 (Del. Ch. 2013) .................................................................17

*Bonanno v. VTB Holdings, Inc.*,
  No. 10681-VCN, 2016 Del. Ch. LEXIS 24 (Ch. Feb. 8, 2016) .........17

*Brady v. Brown*,
  51 F.3d 810 (9th Cir. 1995) ...................................................................19

*Carper v. New Castle County Bd. of Ed.*,
  432 A.2d 1202.........................................................................................17

*Cyan, Inc. v. Beaver County Employees Retirement Fund*,
  138 S. Ct. 1061, 1066 (2018)………………………………………16

*Duncan v. Walker*,
  533 U.S. 167 (2001)..................................................................................8

*Dura Pharms. Inc. v. Broudo*,
  544 U.S. 336 (2005).....................................................................13, 14, 15

*EdgePoint Capital Holdings, LLC v. Apothecare Pharm., LLC*,
  No. 19-10522-NMG, 2020 U.S. Dist. LEXIS 142153 (D. Mass.
  Aug. 7, 2020) ...........................................................................................9

*Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London*,
    940 F. Supp. 528 (S.D.N.Y. 1996) *aff'd,* 147 F.3d 118 (2d Cir. 1998) .............19

*FTC v. AMG Capital Mgmt., LLC*,
    910 F.3d 417 (9th Cir. 2018) ........................................................................9

*GFL Advantage Fund, Ltd. v. Colkitt*,
    272 F.3d 189 (3d Cir. 2001) .......................................................................10

*Holland America Line Inc. v. Wartsila North America, Inc.*,
    485 F.3d 450 (9th Cir. 2007) ......................................................................19

*Komanoff v. Mabon, Nugent & Co.*,
  884 F. Supp. 848, 857 (S.D.N.Y. 1995)……………………………………….9

*Lueck v. Sundstrand Corp.*,
    236 F.3d 1137 (9th Cir. 2001) ....................................................................19

*Martin v. Hunter's Lessee*,
    14 U.S. (1 Wheat) 304, 4 L. Ed. 97 (1816) ................................................20

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970).......................................................................................7

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda*,
    730 F.3d 1111 (9th Cir. 2013) ....................................................................14

*Occidental Life Ins. Co. v. Pat Ryan & Assocs., Inc.*,
    496 F.2d 1255 (4th Cir. 1974) ....................................................................10

*Old Dominion Transp. Co. v. Hamilton*,
    146 Va. 594 (1926) .......................................................................................6

*Omega Overseas Partners, Ltd. v. Griffith*,
    13-cv-4202 (RJS) 2014 U.S. Dist. LEXIS 109781 (S.D.N.Y. Aug.
    7, 2014) ..........................................................................................................9

*PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Tr.*,
    28 A.3d 1059 (Del. 2011) ...........................................................................17

*Richards v. Lloyd's of London*,
    135 F.3d 1289 (9th Cir. 1998) ....................................................................19

iv

*Schueneman v. Arena Pharms., Inc.*,
  840 F.3d 698 (9th Cir. 2016) ...................................................................12

*In re Silicon Storage Tech. Inc.*,
  No. C 06-4310 JF, 2009 U.S. Dist. LEXIS 58705 (N.D. Cal. July
  7, 2009) .....................................................................................................15

*Simula, Inc. v. Autoliv, Inc.*
  175 F.3d 716 (9th Cir. 1999) ...................................................................19

*Stanley Black & Decker, Inc. v. Gulian*,
  70 F. Supp. 3d 719 (D. Del. 2014)...........................................................15

*STM Invest S.A.R.L. v. 3P Equity Partners, LLC*,
  Case No. 19-CV-1764-CMB-ASx, 2009 U.S. Dist. LEXIS 100340
  (C.D. Cal. June 14, 2019) ..........................................................................8

*United States v. Menasche*,
  348 U.S. 528 (1955)....................................................................................8

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
  282 F. Supp. 3d 1074 (N.D. Cal. 2017).............................................*passim*

*Western Fed. Corp. v. Erickson*,
  739 F.2d 1439 (9th Cir. 1984) ....................................................................8

*Winters v. Stemberg*,
  529 F. Supp. 2d 237 (D. Mass. 2008)......................................................15

**Statutes**

15 U.S.C. § 78u-4(b)(4) ...............................................................................13

Del. Code Ann. tit. 8, § 115 ...........................................................................3

Securities Exchange Act of 1934.............................................................*passim*

Investment Advisers Act of 1940 .............................................................8, 10

v

## I.      INTRODUCTION

Plaintiff/appellant Dean Drulias ("Plaintiff")[1] raises two issues on appeal: (1) whether the District Court erred in dismissing Plaintiff's derivative claims under Section 29(b) of the Exchange Act (Count Seven of the Complaint) and (2) whether the District Court erred in dismissing Plaintiff's derivative claim under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder (Count Eight of the Complaint). Plaintiff respectfully submits that the District Court's dismissal of these claims was in error and the judgment should be reversed.

As to Section 29(b), both the statutory language and the legislative history make clear that contracts may be rescinded where one contracting party abuses the rights and privileges obtained under such contracts to commit securities fraud. To deter securities violations, Section 29(b) paints with a broad brush and permits recession of contracts whose later "performance" "involves" a violation of the securities laws. It is of crucial importance here that Congress did not merely restrict Section 29(b) to contracts illegally "made." If a contract *requires* illegality under the Exchange Act it is made in violation of the securities laws, and the rest of Section 29(b) would be rendered superfluous. Thus, under defendants'/appellants' ("Defendants") reading of Section 29(b) each part of the statute beginning with the words "*and* every contract…." would have no additional

---

[1] Unless otherwise stated, all defined terms herein have the meanings ascribed to them in Plaintiff's Opening Brief to this Court.

1

meaning. But no part of a statute may be read to have no meaning, or dismissed as excess verbiage. Nor can Defendants' reading be squared with Section 29(c) which specifically contemplates declaring unlawful the extension of credit under a credit agreement that was perfectly legal when made, but not legal as performed. Supreme Court precedent requires that two parts of the same statute be read *in pari materia*. Moreover, Defendants rely exclusively on case law outside this Circuit and fail even to mention the legislative history of the Exchange Act and Section 29(b) – which history neither justifies the decision reached by the District Court nor the position advocated by Defendants in their Answering Brief.

As to Section 10(b), Defendants continue to misstate the legal standard for Plaintiff's claim. The District Court accepted Defendants' flawed reasoning and erroneously concluded that because Perry and Guthrie's misrepresentations to investors inflated TrueCar's stock price and these defendants received the RSUs at the same inflated price, Plaintiff failed to allege losses to TrueCar compensable under Section 10(b) and Rule 10b-5. ER 22-23. As Plaintiff explains in his Opening Brief, this reasoning is flawed because it confuses the legal standard for loss causation and economic loss in a derivative action, with the differing standard in a fraud-on-the-market case.

In their Answering Brief, Defendants/appellees Victor Perry and Michael Guthrie ("Defendants") raise an alternative basis for affirming the District Court's

dismissal, arguing the District Court's judgment should be affirmed on the basis of *forum non conveniens* because Plaintiff's Sections 29(b) and 10(b) claims were subject to TrueCar Inc.'s ("TrueCar" or the "Company") forum selection clause. Plaintiff respectfully submits that while TrueCar's forum selection clause may apply to Plaintiff's *state law claims*, it does not extend to Plaintiffs *Exchange Act-based claims* or, as Defendants urge, provide an alternative basis for affirming dismissal of those federal claims. It would be unconstitutional to permit dismissal under *forum non conveniens* by allowing a forum selection clause to extinguish federal securities claims under the Exchange Act and contrary to the intentions of the Delaware legislature in crafting Del. Code Ann. tit. 8, § 115. In sum, the District Court's Judgment should be reversed and this action on behalf of TrueCar should be remanded so that Plaintiff's Sections 10(b) and 29(b) claims may proceed.

## II.    ARGUMENT

### A.    Plaintiff Sufficiently Pleads His Claim for Violation of Section 29(b)

Plaintiff's Complaint seeks the rescission of CEO Perry and CFO Guthrie's employment agreements dated November 16, 2015 and October 25, 2013, respectively, as a result of their violations of the federal securities laws as alleged in the Complaint and the Securities Class Action. ER 124-125 (¶¶ 214-221). The District Court erroneously held that Plaintiff failed to state a claim for rescission

under Section 29(b) against defendants Perry and Guthrie because Plaintiff did not demonstrate that the employment contracts "violated securities law when [they were] made or *required* a violation of securities law in [their] performance." ER 21 (emphasis in original). Defendants repeat this argument in their Answering Brief and claim that Section 29(b) requires an illegal contract. But Defendants' argument and the District Court's ruling ignore well-accepted statutory rules of construction and the authorities within this Circuit which state that rescission pursuant to Section 29(b) may be based on securities law violations committed during the performance of an otherwise legal contract – the only interpretation of Section 29(b) that dovetails with the legislative history of the Exchange Act.

> **1.  Congress Intended that Section 29(b) Encompass Illegal Contracts *and* Contracts Where the Performance Involves a violation of the Securities Laws**

Section 29(b) begins:

> Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, ***and*** every contract (including any contract for listing a security on an exchange) heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void… [Emphasis added].

Congress crafted Section 29(b) to apply to contracts "made in violation of any provision of this chapter," but it clearly did not stop there, and included contracts whose later "performance" "involves" a violation of the securities laws.

It is of crucial importance here that Congress decided not to restrict Section 29(b) to contracts illegally "made," which would have allowed anyone simply to read a contract to determine if it contained or required a violation of the securities laws, and was therefore void. Rather, Congress made a deliberate decision to go further, permitting extrinsic, after-the fact evidence for a Section 29(b) action. Indeed, in 1934 when the provision was adopted, Ohio Congressman John G. Cooper remarked on the broad reach of Section 29(b), and noted that an act not required under a contract could require voiding the contract, even if the act was an innocent administrative error:

> The far-reaching consequence of this subsection is little comprehended. This provision, coupled with the use throughout the act of the words "it shall be unlawful", opens the door to a vast amount of litigation which may involve many of the daily commercial and banking transactions of our country. If, perchance, through the error of a clerk, or even of a partner, a miscalculation has been made as to the amount that could be legally loaned or borrowed, it could not be corrected, for if a transaction be void, neither party can seek redress in a court of law.

CONGRESSIONAL RECORD—HOUSE, May 2, 1934: 7929-30. Thus, as understood by the enactors, Section 29(b)'s enforcement bite extended to *behavior* that was not at all contractually required. There is thus no need to parse the original contractual language for any sort of illegality. As discussed in Plaintiff's Opening Brief, the Exchange Act was written in the midst of the Great Depression to broadly deter securities violations and their serious consequences. Section 29(b)

thus echoes the concerns of that time by providing a remedy in the form of rescission to void unseemly contractual payouts to insider traders and other securities malefactors. The Defendants' and the District Court's reading of Section 29(b), however, would remove a powerful weapon Congress intended to place in the hands of wronged corporations who wish no longer to be parties to contracts they made in good faith with the wrongdoer, and who wish as well to recapture the value paid for an illicit performance. *Cf. Old Dominion Transp. Co. v. Hamilton,* 146 Va. 594, 607 (1926) (likening such a contractual wrongdoer to a party who insists: "I have done an evil thing for you, pay me for it…").

**2.  Ninth Circuit Decisions Hold that Even Lawful Contracts Are Subject to Rescission Under Section 29(b)**

Defendants cite no Ninth Circuit authority in support of their narrow interpretation of Section 29(b) because, to Plaintiff's knowledge, there is none. The Ninth Circuit cases addressing Section 29(b) support Plaintiff's interpretation of the statute. *See In re Asyst Technologies, Inc. Derivative Litig.*, No. C-06-04669 EDL, 2008 U.S. Dist. LEXIS 96834 (N.D. Cal. Nov. 12, 2008).  *See also In re Wells Fargo & Co. S'holder Derivative Litig.*, 282 F. Supp. 3d 1074 (N.D. Cal. 2017). Instead of conceding the Ninth Circuit's interpretation of Section 29(b) differs from their own (as did the District Court), Defendants make a tortured attempt to distinguish *Asyst Technologies* and *Wells Fargo*.

For example, in *Asyst Techs.*, 2008 U.S. Dist. LEXIS 96834, the district court upheld derivative claims under 29(b) even where the contract for which rescission was sought was not illegal *ab initio*. Nevertheless, Defendants claim *Asyst Techs.* is different than this case because "the contracts at issue were *backdated* stock option grants made to a majority of the company's directors." Defendants' Answering Brief at p. 25 (emphasis in original). This is a red herring because plaintiffs in that case sought rescission, generally, of all options contracts received by the defendants who had violated the securities laws "in the *performance of administering* Asyst's stock option plans" – not merely those options contracts that provided backdated options. *Asyst Techs.*, 2008 U.S. Dist. LEXIS 96834 at *27-28 (emphasis added).

Similarly, in *Wells Fargo* the defendants argued for dismissal since "Plaintiffs have not alleged any particular contract that was entered into or performed in violation of the Exchange Act." *Wells Fargo*, 282 F. Supp. 3d at 1105. This argument for dismissal was rejected, deeming as sufficient plaintiffs' argument that: [a]s Defendants committed violations of the securities laws while performing their employment contracts entered into with Wells Fargo, the Company is entitled to rescission of those agreements." *Id.*

As Plaintiff explains in his Opening Brief, the U.S. Supreme Court in *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 388, n.11 (1970), and the Ninth Circuit in

7

*Western Fed. Corp. v. Erickson*, 739 F.2d 1439, 1433 n.5 (9th Cir. 1984) have similarly reasoned that Section 29(b) remedies can be invoked to rescind otherwise lawful contracts.

District courts in this Circuit construing Section 215(b) of the Investment Advisers Act ("IAA")[2] which is analogous to Section 29(b) have likewise declined to limit rescission under Section 215(b) to claims involving illegal contracts. *STM Invest S.A.R.L. v. 3P Equity Partners, LLC*, Case No. 19-CV-1764-CMB-ASx, 2009 U.S. Dist. LEXIS 100340, at *7 (C.D. Cal. June 14, 2019) (rejecting argument that rescission under Section 215(b) of the IAA is limited to illegal contracts and observing that Section 29(b) of the Exchange Act is analogous and "may be based on violations which do not involve an illegal contract").

Basic precepts of statutory construction require this result. It is "a cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Duncan v. Walker,* 533 U.S. 167, 174 (2001) (internal quotation marks and citations omitted); *United States v. Menasche,* 348 U.S. 528, 538-539 (1955) ("It is our duty to give effect, if possible, to every

---

[2] Section 215(b) of the IAA provides, in relevant part: "Every contract made in violation of any provision of this subchapter and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of this subchapter, or any rule, regulation, or order thereunder, shall be void . . ."

8

clause and word of a statute.") (internal quotation marks omitted); *Beck v. Prupis,* 529 U.S. 494, 506 (2000) (it is a "longstanding canon of statutory construction that terms in a statute should not be construed so as to render any provision of that statute meaningless or superfluous."). It would also violate the canons of construction if Section 29(b) was read to require a contract that was on its face illegal, while Section 29(c) plainly does not so require. *FTC v. AMG Capital Mgmt., LLC,* 910 F.3d 417, 433 n.2 (9th Cir. 2018)("statutes addressing the same subject matter should be construed *in pari materia.*").

**3.    The Cases Cited by the District Court and by Defendants are Not Precedential Authority and Their Interpretation of Section 29(b) Conflicts with the Legislative History of the Exchange Act**

The District Court relies exclusively on authorities from the Third and Fourth Circuits as well as a district court case in the Second Circuit to support its rationale for dismissing Plaintiff's Section 29(b) claim. ER 21. All of these decisions take a narrow view of the claim not shared by courts within this Circuit.[3] *Omega Overseas Partners, Ltd. v. Griffith,* 13-cv-4202 (RJS) 2014 U.S. Dist. LEXIS 109781 (S.D.N.Y. Aug. 7, 2014) at *22 citing *Komanoff v. Mabon, Nugent & Co.,* 884 F. Supp. 848, 857 (S.D.N.Y. 1995) (merely observing that Section

---

[3] A recent district court case adopts the broader view that "Section 29(b) does not render void only those contracts that 'by their terms' violate the Act." *EdgePoint Capital Holdings, LLC v. Apothecare Pharm., LLC,* No. 19-10522-NMG, 2020 U.S. Dist. LEXIS 142153, at *12 (D. Mass. Aug. 7, 2020).

29(b) of the Exchange Act is analogous to Section 215(b) of the IAA, and confining its observations to a lone district court within the Second Circuit which has interpreted the statutory language of Section 29(b) to mean that only unlawful contracts may be rescinded); *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 206 (3d Cir. 2006) (noting that the Third Circuit has adopted a narrow view of Section 29(b), but nevertheless, reversing the dismissal of a Section 29(b) claim premised on a violation of Section 10(b)).

*Occidental Life Ins. Co. v. Pat Ryan & Assocs., Inc.*, 496 F.2d 1255, 1266 (4th Cir. 1974) on which Defendants rely is simply inapposite. The Fourth Circuit did not foreclose the application of Section 29(b) to lawful contracts in cases where there has been a violation of the securities laws. Rather, the court concluded that plaintiff had alternative remedies under both the 1933 and 1934 Acts and application of Section 29(b) to the facts at issue would "not advance the purposes of the securities laws" because it would bestow an "unexpected windfall" on plaintiff, and "serve to nullify those other remedies and substitute a penalty provision." *Id.* at 1267.

*GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 202 (3d Cir. 2001) is unpersuasive because it attempts to impose a new element on Section 29(b) claimants: to show that the violation of the Exchange Act is "inseparable from the performance of the contract." *Id.* This is an incorrect reading of Section 29(b) and

10

like Defendants' other authorities, inconsistent with statutory language and congressional intent in enacting the provision.

In sum, as in *Asyst* and *Wells Fargo*, and consistent with the reasoning in other Ninth Circuit cases, the statutory language, and Congress' plain adoption of well-established views on the validity of contracts illegally performed, the District Court's dismissal of Plaintiff's claim for rescission pursuant to Section 29(b) should be reversed.

**B.      Plaintiff Sufficiently Pleads his Claim for Violation of Section 10(b) and Rule 10b-5 Promulgated Thereunder**

Plaintiff's Complaint alleges a claim for violation of Section 10(b) of the Exchange Act and Rule 10b-5 relating to the restricted stock units ("RSUs") awarded to defendants Perry and Guthrie. The Complaint sufficiently alleges each element of a Section 10(b) claim to survive the lenient motion to dismiss standard. Further, and importantly, the District Court upheld the Section 10(b) violations in denying the motion to dismiss the Securities Class Action. That ruling, applied here, is sufficient to uphold Plaintiff's claim and reverse the District Court's dismissal.

Specifically, Perry and Guthrie are alleged to have known of or recklessly disregarded the USAA website redesign, even though USAA was core to TrueCar's operations. Thus, Plaintiff plausibly alleged that these defendants "made material and misleading statements through their participation in and approval of [the

11

corporation's] public filings." *Wells Fargo*, 282 F. Supp. 3d at 1093; ER 35-131 (*e.g.* ¶¶ 9-10, 28, 32, 34, 74, 76, 93, 122, 222-33).

Moreover, Perry and Guthrie made multiple misrepresentations regarding growth based upon the USAA affinity partnership and Shared Website, with knowledge that a major redesign of that website would, or already was, impacting TrueCar's growth. Perry and Guthrie were not under any obligations to disclose growth targets, but "'once defendants cho[o]se to tout' positive information to the market, 'they [are] bound to do so in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information." *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 706 (9th Cir. 2016) (alterations in original).

### 1. The Complaint Alleges Damages and Loss Causation

In dismissing the claim, the District Court erroneously reasons that because Perry and Guthrie's misrepresentations to investors inflated TrueCar's stock price and these defendants received the RSUs at the same inflated price, Plaintiff fails to allege losses to TrueCar compensable under Section 10(b) and Rule 10b-5. ER 22-23. Defendants offer the same justification. This reasoning is flawed because it confuses the legal standard for loss causation and economic loss in a derivative action asserting loss in connection with the *grant* of securities, with the differing standard applicable to open market purchasers in a fraud-on-the-market case. *Wells*

*Fargo*, 282 F. Supp. 3d at 1104 (analyzing loss causation in a derivative action in the context of a Section 14(a) claim where plaintiffs alleged "sufficient allege loss causation, i.e. that the transactions approved by shareholders harmed the company." (Emphasis added)). *Cf. Dura Pharms. Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (explaining loss causation requirements in a securities class action).

Plaintiff alleges the Company was injured by the transaction in which the RSUs and options were issued to Perry and Guthrie. ER 128 (¶¶ 231-232). The loss and damage was *not in the inflation or subsequent decline in value*, but in the issuance of the RSUs, as TrueCar was defrauded into parting with valuable property. *Id.* In other words, Plaintiff is suing to recover *TrueCar's* loss, not that of Perry and Guthrie. Defendants complain that "[t]aken to its logical end, Plaintiff's theory would mean that anytime an executive is alleged to have made a false or misleading forecast, all of her or his stock-based compensation can be challenged as a violation of Section 10(b)." Defendants' Answering Brief at p. 33. This, they argue, "is not the law." *Id.* Plaintiff respectfully disagrees – this is the law. 15 U.S.C. § 78u-4(b)(4) ("In any private action arising under this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages"). In a case of a grant of restricted stock or options due to fraud, there is an immediate loss of valuable property and immediate loss causation. What

13

difference does it make to loss causation if the defendants were granted stock or options at an inflated price, so long as the securities unlawfully obtained had value? An option at any strike price has value, as does an RSU at any price. The strike price is relevant to the value of the option and the amount of damages—it has no relevance to the existence of damages. Thus, derivative plaintiffs, like Plaintiff here, have adequately alleged loss causation where the corporation was harmed by, among other things, the excessive [incentive] compensation unlawfully provided to Defendants." *Wells Fargo*, 282 F. Supp. 3d at 1104.

## 2. Analogizing To Fraud-on-the-Market Class Actions is Improper Here

Defendants' cited cases – fraud-on-the-market class actions – are inapplicable here.[4] In such cases, an investor has *bought* stock at an inflated price, and the inflation dissipates when a fraud is revealed. The loss causation analysis focuses on whether a loss was later realized by the defrauded buyer. But here, that is not the focus – TrueCar did not defraud Perry and Guthrie – it is the other way around. Loss causation is immediate here, as TrueCar should not have provided Perry and Guthrie with valuable RSUs and options, and it suffered a loss as soon as the grants were made. Indeed, public companies must recognize a compensation expense in such circumstances. *See* GAAP Rule ASC 718, Wiley GAAP Guide,

---

[4] *Dura Pharms.*, 544 U.S. at 346 (securities class action holding complaint failed to allege loss causation); *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1121 (9th Cir. 2013) (same).

Chapter 48 (John Wiley & Sons 2019); *Winters v. Stemberg,* 529 F. Supp. 2d 237, 249 (D. Mass. 2008) (taking a compensation expense shows that the corporation was harmed). *Cf. In re Silicon Storage Tech. Inc.*, No. C 06-4310 JF, 2009 U.S. Dist. LEXIS 58705, at *33-37 n.11 (N.D. Cal. July 7, 2009) (loss causation occurs at the time a stock option is granted, where the terms of that grant were affected by fraud). *See also, Stanley Black & Decker, Inc. v. Gulian*, 70 F. Supp. 3d 719, 729 (D. Del. 2014) (*Dura* loss causation test inapposite to a situation in which harm occurred because corporation assumed a burden it would not have assumed but for the fraud).

**C.     TrueCar's Forum Selection Clause Does Not Provide an Alternative Basis to Affirm Dismissal**

In their Answering Brief, Defendants urge this Court to affirm the District Court's dismissal of Plaintiff's Exchange Act claims on the basis of TrueCar's forum selection provision, even though the District Court refuted Defendants' argument that this provision extinguished Plaintiff's federal claims.  Specifically, Defendants argue that TrueCar's forum selection provision, which designates the Court of Chancery of the State of Delaware as the exclusive forum for derivative actions on behalf of the Company, precludes adjudication of Plaintiff's Sections 10(b) and 29(b) claims in federal court. In the proceedings below, the District Court dismissed Plaintiff's Delaware law-based claims under the doctrine of *forum non conveniens*, concluding that it applied "solely to Plaintiff's state law claims."

ER 17. The District Court also held, however, that the forum provision did not operate to "strip jurisdiction over federal claims from this Court":

> Crucially, this Court does not find that the text of TrueCar's forum-selection clause necessarily operates to strip jurisdiction over federal claims from this Court, or any other federal court, as asserted by Plaintiff. This is because the clause limits application to "*to the fullest extent permitted by law.*" Dkt. 12 ¶ 22 (emphasis added). Because claims arising under the Securities and Exchange Act of 1934 cannot be decided by state courts, the Court finds that the face of the disputed forum-selection clause here plainly operates to exclude application with regard to derivative claims brought under federal securities law. *See Cyan, Inc. v. Beaver County Employees Retirement Fund,* 138 S. Ct. 1061, 1066 (2018).

ER 15.

### 1. Allowing TrueCar to Use its Forum Selection Provision to Extinguish Plaintiff's Federal Claims is Contrary to Delaware Law

Forum selection clauses were not intended to extinguish federal claims and the Delaware Court of Chancery has explicitly warned against forum selection clauses that eliminate access to the federal courts:

> *On their face, neither of the forum selection bylaws purports in any way to foreclose a plaintiff from exercising any statutory right of action created by the federal government.* Rather, the forum selection bylaws plainly focus on claims governed by the internal affairs doctrine and thus the law of the state of incorporation. In the event that a plaintiff seeking to bring a claim within the exclusive jurisdiction of the federal courts is met with a motion to dismiss because of the forum selection clause, the plaintiff will have the most hospitable forum possible to address the motion by pressing an argument that the bylaw cannot operate *to foreclose her suit—a federal court.* … Second, the plaintiff could argue that if the board took the position that the bylaw waived the stockholder's rights under

16

the Securities Exchange Act, such a waiver would be inconsistent with the antiwaiver provisions of that Act, codified at 15 U.S.C. § 78cc.

As a distinguished scholar has pointed out, there likely are pragmatic solutions to the imagined scenarios that the plaintiffs cite, which would both respect the forum selection bylaws' requirement that state law internal affairs claims be adjudicated in the courts of the state of incorporation, *while preserving any substantive claims that must be brought in federal court.*[5] (Emphasis added).

*Boilermakers Local 154 Ret. Fund v. Chevron Corp.,*73 A.3d 934, 962-63 (Del. Ch. 2013).

Delaware's legislature also did not intend forum selection clauses to foreclose federal claims. Indeed, the Delaware General Assembly took the admonitions in *Boilermakers* to heart when enacting Section 115 in 2015. To prevent a corporation from seizing on any ambiguities as to the statute's scope or intent, the legislature made clear that forum clauses must be reasonable on their face and "operate reasonably" as applied. It also stated plainly that no Delaware corporation was authorized to enforce a clause that operated to expunge federal claims. The Senate bill's Original Synopsis states in relevant part:[6]

---

[5] *Boilermakers* also noted that a clause which sought to defeat federal jurisdiction might not "operate reasonably." *Id.* at 961.

[6] This Synopsis may be relied upon to interpret Section 115's legislative intent. *Bonanno v. VTB Holdings, Inc.,* No. 10681-VCN, 2016 Del. Ch. LEXIS 24, at *48 (Ch. Feb. 8, 2016). "The synopsis of the Bill [is] a proper source from which to glean legislative intent…" *Carper v. New Castle County Bd. of Ed.,* 432 A.2d 1202, 1205. *See also PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Tr.,* 28 A.3d 1059, 1077 (Del. 2011)(relying on Senate bill synopsis to discern intent of law).

New Section 115 confirms, as held in *Boilermakers Local 154 Retirement Fund v. Chevron Corporation,* 73 A.3d 934 (Del. Ch. 2013), that the certificate of incorporation and bylaws of the corporation *may effectively specify,* consistent with applicable jurisdictional requirements, that claims arising under the DGCL, including claims of breach of fiduciary duty by current or former directors or officers or controlling stockholders of the corporation, or persons who aid and abet such a breach, *must be brought only in the courts (including the federal court)* in this State.

***

Section 115 is not intended to foreclose evaluation of whether the specific terms and manner of adoption of a particular provision authorized by Section 115 comport with any relevant fiduciary obligation *or operate reasonably in the circumstances presented*. For example, such a provision may not be enforceable if the Delaware courts lack jurisdiction over indispensable parties or core elements of the subject matter of the litigation. *Section 115 is also not intended to authorize a provision that purports to foreclose suit in a federal court based on federal jurisdiction,* nor is Section 115 intended to limit or expand the jurisdiction of the Court of Chancery or the Superior Court (Emphasis supplied).[7]

If TrueCar's Forum Provision were to be applied to require dismissal of Plaintiff's Exchange Act claims, it would be inconsistent with the Delaware legislature's intent and the admonitions of the Delaware Court of Chancery.

---

[7] It is important to note that the language as to what type of forum may be specified specifically refers to "*courts,*" plural, not the Chancery Court, singular. Plus, this is to be read as "including the federal court." Although TrueCar's Forum Provision was adopted in 2014, and Section 115 adopted in 2015, the Forum Provision must be evaluated in light of Delaware's enunciated public policy at the time TrueCar seeks its enforcement. *See Bonnano, supra* (interpreting 2011 provision in light of public policy reflected in 2015 enactment of Section 115).

18

Moreover, enforcing the provision as Defendants urge against the will of Delaware would contravene a strong policy of California which requires respect for the laws of other jurisdictions. *See Brady v. Brown,* 51 F.3d 810, 816 (9th Cir. 1995) (applying Mexican law).

### 2. Defendants' Argument Regarding the Existence of Reasonable Remedies in Delaware Chancery Court should be Rejected

Defendants argue in their Answering Brief that TrueCar's forum selection clause provides an alternative ground for affirming dismissal of Plaintiff's Sections 10(b) and 29(b) claims because "it was Plaintiff's burden to show there was no reasonable remedy in Delaware Chancery Court." Answering Brief at p. 43. But Plaintiff had no such burden and the District Court soundly rejected Defendants' attempt to extend the holdings of *A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088-89 (9th Cir. 2018) and decisions like it which, unlike this case, involved principles of international comity and state public policy.[8] The District Court stated: "This Court declines to extend those holdings to permit dismissal under *forum non conveniens* when the result would extinguish the ability to bring

---

[8] *Richards v. Lloyd's of London*, 135 F.3d 1289, 1293-94 (9th Cir. 1998) (forum selection clause designated foreign forum); *Simula, Inc. v. Autoliv, Inc.* 175 F.3d 716, 723 (9th Cir. 1999) (same); *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001) (same); *Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 457 n.4 (9th Cir. 2007) (same); *Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London*, 940 F. Supp. 528, 539 (S.D.N.Y. 1996) (same) *aff'd,* 147 F.3d 118 (2d Cir. 1998).

any derivative federal securities claims under the Exchange Act." ER 16. As the District Court correctly observed "[i]f given the construction Defendants' urge, it would be impossible to bring an Exchange Act derivative claim with a forum-selection clause like TrueCar's because the Delaware Chancery [Court] has no jurisdiction over Exchange Act claims." *Id*. As discussed in Plaintiff's Opening Brief and herein *supra,* the overarching consideration is Delaware's legislative intent, and the Court of Chancery's general admonitions against forum provisions that attempt to extinguish federal claims. Thus, that the Delaware Chancery Court purportedly offers remedies similar to those sought under the Exchange Act is of no import to this Court's analysis and provides no alternative basis to affirm the dismissal of Plaintiff's Sections 10(b) and 29(b) claims.

Defendants' suggestion also could cause serious Constitutional concerns. It has been bedrock Constitutional law for over 200 years that, where a state exercise of undue power could "undermine the stability and efficiency of a federal statutory regime, the need for uniformity becomes a substantial federal interest, justifying the exercise of jurisdiction in the federal courts**.**" *Martin v. Hunter's Lessee,* 14 U.S. (1 Wheat) 304, 347-48, 4 L. Ed. 97 (1816). The District Court was correct not to expunge federal claims due to any provision TrueCar adopted under color of Delaware law.

20

## III.     CONCLUSION

The District Court's order dismissing the Complaint should be reversed and Plaintiff's appealed claims should be reinstated.

Dated: September 1, 2020                    Respectfully submitted,

                                            **MONTEVERDE & ASSOCIATES PC**

                                            By: */s/ Beth A. Keller*
                                                Beth A. Keller
                                            The Empire State Building
                                            350 Fifth Avenue, Ste. 4405
                                            New York, NY 10118
                                            Telephone: (212) 971-1341
                                            Facsimile: (914) 752-3041
                                            Email: bkeller@monteverdelaw.com

                                            -and-

                                            David E. Bower (BAR #119546)
                                            600 W. Corporate Pointe, Ste. 1170
                                            Culver City, CA 90230
                                            Telephone: (213) 446-6652
                                            Facsimile: (212) 202-7880
                                            Email: dbower@monteverdelaw.com

                                            **PASKOWITZ LAW FIRM P.C.**
                                            Laurence D. Paskowitz
                                            208 East 51st Street, Ste. 380
                                            New York, NY 10022
                                            Telephone: (212) 685-0969
                                            Email: lpaskowitz@pasklaw.com

                                            *Attorneys for Plaintiff Dean Drulias*

21

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Number(s)** 19-56455

I am the attorney or self-represented party.

**This brief contains 5,122 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
　　[ ] it is a joint brief submitted by separately represented parties;
　　[ ] a party or parties are filing a single brief in response to multiple briefs; or
　　[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** */s/ Beth A. Keller*　　　**Date** September 1, 2020

**Form 8**　　　　　　　　　　　　　　　　　　　　　　　　　　*Rev. 12/01/18*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* <u>*http://www.ca9.uscourts.gov/forms/form15instructions.pdf*</u>

| **9th Cir. Case Number(s)** | 19-56455 |
|---|---|

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

| **Signature** | Beth A. Keller | **Date** | Sep 1, 2020 |
|---|---|---|---|

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* <u>*forms@ca9.uscourts.gov*</u>

**Form 15**                                                                 *Rev. 12/01/2018*